**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000485**
**31-MAY-2024**
**08:19 AM**
**Dkt. 39 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

SIERRA CLUB OF HAWAIʻI, MAUI GROUP, a non-profit organization,
and MAUI TOMORROW FOUNDATION, a non-profit organization,
Plaintiffs-Appellees/Cross-Appellees,
v.
ANAERGIA SERVICES, LLC, a foreign limited liability company,
MAUI ALL NATURAL ALTERNATIVE, LLC, a foreign limited liability
company, Defendants-Appellees/Cross-Appellants,
and
DIRECTOR OF ENVIRONMENTAL MANAGEMENT, COUNTY OF MAUI,
Defendant-Appellant/Cross-Appellee,
and
DOES 1-27

NO. CAAP-19-0000503
(CONSOLIDATED WITH CAAP-19-0000485)

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 18-1-0236(3))

MAY 31, 2024

LEONARD, ACTING C.J., AND WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from a dispute involving a proposed project for renewable energy conversion and sludge processing at the Wailuku-Kahului Wastewater Reclamation Facility (**WKWRF**) in Kahului, Maui (the **Project**).  Plaintiffs-Appellees/Cross-Appellees Sierra Club of Hawaiʻi, Maui Group and Maui Tomorrow Foundation (collectively, **Plaintiffs**) sued Defendant-

Appellant/Cross-Appellee Director of the Department of Environmental Management, County of Maui (the **County**) and Defendants-Appellees/Cross-Appellants Anaergia Services, LLC (**Anaergia**) and Maui All Natural Alternative, LLC (**MANA**) (together, the **Anaergia Defendants**, and collectively with the County, **Defendants**). Plaintiffs alleged, among other things, that Defendants violated the Hawaiʻi Environmental Policy Act (**HEPA**), Hawaii Revised Statutes (**HRS**) chapter 343, by processing an environmental impact statement (**EIS**) for the Project as an "applicant action" rather than an "agency action."

The County appeals and the Anaergia Defendants cross-appeal from the Final Judgment (**Judgment**), entered in favor of Plaintiffs and against Defendants on June 7, 2019, by the Circuit Court of the Second Circuit (**Circuit Court**).[1] Defendants also challenge the following Circuit Court orders, entered on May 30, 2019: (1) "Order Granting in Part and Denying as Moot Plaintiffs' Motion for Partial Summary Judgment (Counts VII and VIII)" (**Order Granting Summary Judgment on Count VII**); (2) "Order Denying Plaintiffs' Motion for Partial Summary Judgment (Counts II and V) as Moot"; and (3) "Order Denying [the Anaergia Defendants'] Motion for Partial Summary Judgment on Counts VII and VIII."

On appeal, the County asserts four points of error, all apparently based on the same contention stated in its first point of error[2] – that the Circuit Court "erroneously ruled that the . . . [P]roject constituted an 'Agency Action' rather than an 'Applicant Action' for the purposes of environmental review"

---

[1] The Honorable Joseph E. Cardoza presided.

On July 3, 2019, the County filed a notice of appeal from the Judgment, initiating appellate case number CAAP-19-0000485. On July 11, 2019, the Anaergia Defendants filed a notice of appeal from the Judgment, initiating appellate case number CAAP-19-0000503. The latter notice was actually a notice of cross-appeal. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4.1. On September 3, 2019, this court entered an order consolidating appellate case numbers CAAP-19-0000485 and CAAP-19-0000503 under CAAP-19-0000503.

[2] The County presents no separate, discernible argument supporting points of error 2, 3, and 4. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

under HRS chapter 343.[3]  The Anaergia Defendants substantively join the County's opening brief.

We hold that the Project is an "agency action" for purposes of environmental review under HEPA.  First, the Project is a HEPA "action" because it is a "program or project" – namely, "a planned undertaking" – "to be initiated by an agency or applicant."  HRS § 343-2 (2010); <u>Umberger v. Dep't of Land & Nat. Res.</u>, 140 Hawaiʻi 500, 513, 403 P.3d 277, 290 (2017).  Second, the County "initiated" the Project by issuing a request for proposals (**RFP**) and hiring MANA to execute the Project.  Based on the plain language of HRS § 343-2, the Project is an "agency action."  The Circuit Court did not err in so ruling.

Accordingly, we affirm the Judgment.

---

[3]     HRS § 343-5(b) and (e) (Supp. 2016) state, in relevant part:

> (b) Whenever an agency proposes an action in subsection (a), other than feasibility or planning studies for possible future programs or projects that the agency has not approved, adopted, or funded, or other than the use of state or county funds for the acquisition of unimproved real property that is not a specific type of action declared exempt under section 343-6, the agency shall prepare an environmental assessment for the action at the earliest practicable time to determine whether an environmental impact statement shall be required; provided that if the agency determines, through its judgment and experience, that an environmental impact statement is likely to be required, the agency may choose not to prepare an environmental assessment and instead shall prepare an environmental impact statement that begins with the preparation of an environmental impact statement preparation notice as provided by rules.

> . . . .

> (e) Whenever an applicant proposes an action specified by subsection (a) that requires approval of an agency and that is not a specific type of action declared exempt under section 343-6, the agency initially receiving and agreeing to process the request for approval shall require the applicant to prepare an environmental assessment of the proposed action at the earliest practicable time to determine whether an environmental impact statement shall be required; provided that if the agency determines, through its judgment and experience, that an environmental impact statement is likely to be required, the agency may authorize the applicant to choose not to prepare an environmental assessment and instead prepare an environmental impact statement that begins with the preparation of an environmental impact statement preparation notice as provided by rules.  The final approving agency for the request for approval is not required to be the accepting authority.

## I.  Background

On March 21, 2016, the County issued the RFP for the "design, construction, operation and maintenance of a gas turbine system with sludge dryer for the [WKWRF] under a power purchase agreement (PPA)[,]" *i.e.*, the Project.  (Formatting and capitalization altered.)  The County's purpose was to replace existing fossil-fuel generated electricity with locally-sourced, renewable energy to meet the power needs of WKWRF, and to reduce wastewater sludge management costs by drying the sludge.

Anaergia was awarded the Project on May 19, 2016, and subsequently formed MANA to execute the Project.

On December 16, 2016, the Maui County Council approved Resolution No. 16-171, authorizing the County to lease to MANA "approximately one-acre of the [WK]WRF property for the Project" under the terms of a 20-year site lease.

On February 14, 2017, MANA and the County entered into a services agreement, which included the supply of firm, renewable energy for the WKWRF and sludge drying service for all municipally generated wastewater sludge.

The parties agree that the Project triggered "environmental disclosure document preparation" under HRS § 343-5.  Accordingly:

- On June 23, 2017, the County submitted an Environmental Impact Statement Preparation Notice (**EISPN**) for the Project, which identified the Project as an "applicant action."  On or about July 24, 2017, Plaintiffs submitted comments on the EISPN.

- On December 23, 2017, MANA's draft EIS was published; it identified MANA as the "applicant."  On or about February 6, 2018, Plaintiffs submitted comments on the draft EIS.

- On March 12, 2018, MANA transmitted the Final Environmental Impact Statement (**FEIS**) for the Project, which included responses to Plaintiffs' comments.  The FEIS was published on March 23, 2018, and the County's acceptance of the FEIS was

4

published on April 8, 2018.

On May 31, 2018, Plaintiffs filed their Complaint, alleging nine claims for relief. Count Seven (VII) alleged, among other things, that the County violated HRS Chapter 343 procedures by processing the EIS as an "applicant action" instead of an "agency action."

On February 27, 2019, Plaintiffs filed two motions for partial summary judgment, including a motion for summary judgment on Count VII. On April 4, 2019, the Anaergia Defendants filed a cross-motion for partial summary judgment, including for summary judgment on Count VII.

The Circuit Court heard the motions on April 24, 2019, and announced its decision on April 30, 2019, as follows:

> As a matter of law, this Court concludes that the application should have been processed as an agency action[;] instead it was processed as an applicant action, . . . contrary to the requirements of [HRS] Chapter 343 . . . and the rules and regulations that relate to that.
>
> Accordingly, the . . . Court grants summary judgment in favor of plaintiffs as to count seven and denies . . . defendant's cross-motion for summary judgment.

On May 30, 2019, the Circuit Court entered the Order Granting Summary Judgment on Count VII, which stated in relevant part:

> The proposed action is an agency action because it involves both the use of County land and the disposal of sludge generated from wastewater management, a government function that in part is being sourced to a private entity. The proposed action's final environmental impact statement was accepted as an applicant action instead of an agency action. The different types of actions are classified and processed differently. Therefore, the proposed action's final environmental impact statement is invalid.

The Court further ruled that "[t]he granting of summary judgment in favor of Plaintiffs as to Count Seven moots all other counts raised in the Complaint filed May 31, 2018."

Accordingly, on June 7, 2019, the Circuit Court entered the Judgment.

## II. Discussion

HEPA requires an environmental assessment "if three conditions are satisfied: (1) the proposed activity is an 'action' under HRS § 343-2 (2010); (2) the action proposes one or more of the nine categories of land uses or administrative acts enumerated in HRS § 343-5(a) . . .; and (3) the action is not declared exempt pursuant to HRS § 343-6(a)(2) (2010)." Umberger, 140 Hawaiʻi at 512, 403 P.3d at 289. "HEPA defines 'action' as 'any program or project to be initiated by any agency or applicant.'" Carmichael v. Bd. of Land & Nat. Res., 150 Hawaiʻi 547, 568, 506 P.3d 211, 232 (2022) (quoting HRS § 343-2). "It follows from this definition that there are two types of HEPA 'actions': agency actions and applicant actions." Umberger, 140 Hawaiʻi at 512 n.17, 403 P.3d at 289 n.17 (citing Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 306, 167 P.3d 292, 299 (2007)).

Here, the parties do not dispute that the Project required the preparation of an EIS pursuant to HRS § 343-5. Rather, their dispute concerns the proper processing of the EIS. As to this issue, the parties disagree as to what precisely the "action" was that triggered the environmental review provisions of HEPA, and whether that action is properly considered an "agency action" or an "applicant action" under HEPA.

A HEPA "action," again, is "any program or project to be initiated by an agency or applicant." HRS § 343-2. "'Program' is generally defined as 'a plan or system under which action may be taken toward a goal[]' [and] '[p]roject' is defined as 'a specific plan or design' or 'a planned undertaking.'" Carmichael, 150 Hawaiʻi at 568-69, 506 P.3d at 232-33 (quoting Umberger, 140 Hawaiʻi at 513, 403 P.3d at 290). "'Agency' is defined as 'any department, office, board, or commission of the state or county government which is a part of the executive branch of that government' and 'applicant' is defined as 'any person who, pursuant to statute, ordinance, or rule, officially requests approval for a proposed action.'" Id. at 568 n.36, 506 P.3d at 232 n.36 (quoting HRS § 343-2). "An important preliminary step in assessing whether an 'action' is subject to

6

environmental review is defining the action itself." Sierra Club, 115 Hawaiʻi at 306 n.6, 167 P.3d at 299 n.6.

Relying in part on these definitions, Defendants contend that the Circuit Court erred in concluding that the Project was an "agency action" rather than an "applicant action." First, Defendants argue that "the 'action' which triggered the need for an EIS is the actual implementation of the . . . [P]roject to be undertaken by the Anaergia Defendants in **response** to the County's RFP," not the RFP itself. Relatedly, Defendants assert that the RFP included no "specific plans, systems, designs or undertakings[.]" Second, Defendants argue that the Project is an "applicant action" under former Hawaiʻi Administrative Rules (**HAR**) § 11-200-6, because the Project (1) requires agency approval from the County, and (2) is being implemented entirely by the Anaergia Defendants.

Plaintiffs, on the other hand, contend that wastewater and waste management are "traditional government functions," and "[t]he [C]ircuit [C]ourt correctly identified municipal waste management as the action under review." (Formatting altered.) Plaintiffs argue: "[T]he [P]roject . . . is a public wastewater system that includes a subprocess – sludge drying – that would be operated by a private entity – Anaergia. That the County privatizes one subprocess in the wastewater system to a private entity does not turn the public wastewater system into a private one." Based on the definition of "action" in HRS § 343-2, Plaintiffs further argue that the Project is an "agency action" because the County "initiated" it.

In reaching its decision, the Circuit Court reasoned in part: "At its core the activity itself involves the processing and disposal of waste. The technology may be new and innovative and arguably more efficient, . . . [but] regardless of . . . what technology is used, the project does involve the disposal of sludge generated from wastewater management, a government function that in part is being sourced to a private entity, MANA." The County does not directly refute this conclusion, focusing instead on "the unspecified and open ended nature of the RFP," which the County contrasts with "the actual implementation

of the . . . [P]roject as proposed by the Anaergia Defendants in the service agreement . . . ."  Thus, it appears that the County is attempting to separate and silo the RFP from the Project the County intended to initiate through the RFP, and despite the fact that the County is a party to the operative services agreement with MANA.

The County's narrow construction of the relevant HEPA "action" does not comport with HEPA's statutory language or mandate.  At bottom, the County issued the RFP to initiate a "program" or "project" (HRS § 343-2) – the "design, construction, operation and maintenance of a gas turbine system with sludge dryer for the [WKWRF] under a [PPA]."  The later EIS, which the County approved, repeated the County's purpose in issuing the RFP, as follows:

> The County . . . desires to supplant existing fossil fuel generated electricity at its [WKWRF] with locally sourced, renewable energy for the community.  In addition, the County . . . seeks an outcome that reduces wastewater sludge (biosolids) management costs by drying the sludge.  The County . . . issued [the RFP] to address these needs and engaged [MANA] as a result of the RFP.

In short, the County hired MANA to execute the County's "planned undertaking" of the Project.  Umberger, 140 Hawaiʻi at 513, 403 P.3d at 290.  The Project is the HEPA "action."

Further, the Circuit Court did not err in concluding that the Project was an "agency action" rather than an "applicant action" for purposes of environmental review under HRS chapter 343.  The County "initiated" the Project by issuing the RFP and engaging MANA to execute the Project.  Based on the plain language of HRS § 343-2, the Project qualifies as an "agency action."  HRS § 343-2 (defining an "action" as "any program or project to be initiated by any agency or applicant"); Umberger, 140 Hawaiʻi at 512 n.17, 403 P.3d at 289 n.17 (noting that this definition distinguishes "agency actions" and "applicant actions").  In addition, as the Circuit Court reasoned, the Project involves the use of County land and wastewater management, which is not only a traditional government function, but one which the County has undertaken at WKWRF.  The Project is an "agency action" for purposes of environmental review under

HEPA.

The County's reliance on former HAR §§ 11-200-5 and -6 is misplaced. HAR §§ 11-200-5 and -6, which addressed the applicability of HRS chapter 343 to agency actions and applicant actions, respectively, were <u>repealed</u>, effective August 9, 2019. That was <u>before</u> the County filed its opening brief asserting that these rules control in determining whether an action is an agency or applicant action. It appears that these repealed rules were replaced in part by HAR §§ 11-200.1-8 and -200.1-9, <u>but</u> the new rules contain substantively different language from the old rules, and, importantly, do <u>not</u> contain the language relied on by the County. In any event, we reject the County's interpretation and application of former HAR § 11-200-6, as inconsistent with the plain language of HRS § 343-2.

For the reasons discussed above, the Final Judgment entered on June 7, 2019, by the Circuit Court of the Second Circuit, is affirmed.

On the briefs:

Caleb P. Rowe and
Richelle K. Kawasaki,
Deputies Corporation Counsel,
County of Maui,
for Defendant-Appellant/
Cross-Appellee

Lance D. Collins
for Plaintiffs-Appellees/
Cross-Appellees

/s/ Katherine G. Leonard
Acting Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge